**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | **Case No. 14-32867** |
| | § | **(Chapter 7)** |
| **DEBTOR.** | § | |
| | § | |

**CHAPTER 7 TRUSTEE'S MOTION UNDER 11 U.S.C. §§ 105(A) AND 363,
BANKRUPTCY RULES 6004 AND 9019 AND LOCAL RULE 9013-1
<u>FOR APPROVAL OF SETTLEMENT</u>**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, the chapter 7 Trustee (the "<u>Trustee</u>") of the chapter 7 estate of Garrison Municipal Partners L.P. (the "<u>Partnership</u>" or "<u>Debtor</u>") files this motion (the "<u>Motion</u>") for entry of an order substantially in the form attached hereto (the "<u>Proposed Order</u>"), pursuant to §§ 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Bankruptcy

Local Rule 9013-1 for the United States Bankruptcy Court for the Southern District of Texas ("Local Rules"), for approval of the settlement (the "LaPorte Settlement") between the Trustee and the Investor Plaintiffs[1] and LaPorte (the "Settling Parties") pursuant to the term of the Settlement Agreement[2] (defined below) and respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). The Trustee consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, Bankruptcy Rules 6004 and 9019, and Local Rule 9013-1.

## BACKGROUND

4.      The Debtor is a limited partnership organized in February 2008 under the laws of the State of Texas.  The primary objective of the Partnership was to invest in the municipal bond market.

---

[1]      The Investor Plaintiffs include J.P. Bryan, Bryan Consolidated Business Interests, Ltd., JP and Mary Jon Bryan Foundation, Mary Jon Bryan, Margaret Vonder Hoya, HRB Global, Ltd., Margaret Vonder Hoya Trust, HRB Oil & Gas, Ltd, Michael J. Maples, Sr., Michael J. Maples, Jr., MJMJR, Ltd., Elizabeth Maples, The Maples Descendants Trust, Margaret Vonder Hoya Grandchildrens Trust, Nathan Bright Petty 2012 Trust, Margaret Louise Petty Morris 2012 Trust, Elizabeth Carrie Petty 2012 Trust, and Bradford Clay Vonder Hoya 2012 Trust And Margaret Louise Bright Petty Testamentary Trust.

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Settlement Agreement.

5.      On May 22, 2014 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Bankruptcy Court</u>").

6.      After the Petition Date, the United States Trustee appointed Rodney D. Tow to serve as the duly-qualified and acting Chapter 7 trustee of the Debtor's estate.

7.      Since his appointment, the Trustee has liquidated the Debtor's assets in accordance with the duties set out in section 704(a)(1) of the Bankruptcy Code.

8.      The Trustee retained Cooper & Scully P.C. as special counsel ("<u>Special Counsel</u>") to prosecute among other things, malpractice claims held by the Debtor. These malpractice claims include malpractice claims against LaPorte, the Debtor's prepetition accounting professional (the "<u>LaPorte Litigation</u>").

9.      Subject to Bankruptcy Court approval, the Trustee has settled the LaPorte Litigation with the Settlement Agreement (the "<u>Settlement Agreement</u>"), a true and correct copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>.  Concurrently with this filing of this Motion, the Trustee has filed a motion seeking authority to file the Settlement Agreement under seal.  Among other things, the Settlement Agreement provides for (i) payment by LaPorte of Three Million Two Hundred Thirty Thousand Dollars ($3,230,000.00) (the "<u>Settlement Amount</u>"), and (ii) exchange of mutual releases.

10.     The purpose of this Motion is to seek Bankruptcy Court approval of the Settlement Agreement.

## CLAIMS AGAINST LaPORTE[3]

11.     The Partnership is a pooled investment fund that received $41,143,794.59 in cash investments from 18 limited partner investors (individually the "Investors").

12.     The Investor Plaintiffs do not include all the Investors. Specifically, the Investor Plaintiffs do not include Donald J. Green, Donna Reeder, Marathon Financial Insurance Company, Jay Steven Adelson, Robert Kevin Rose and Patricia Thomas IRA.

### A. Garrison's Fraudulent Mark-Up Practice and Improper Payment of Fees

13.     Since the inception of the Partnership, Charles Monroe Garrison ("Monroe Garrison") represented to the Investors that the Partnership would invest primarily in municipal securities.   However, notwithstanding these representations, Monroe Garrison caused the Partnership to invest in highly speculative securities that were not readily marketable.

14.     Monroe Garrison caused the Partnership to "value" these non-marketable securities in its books in amounts that far exceeded the amount paid for such investments. Specifically, Monroe Garrison would cause the Partnership to purchase certain bonds at below par and then would immediately mark them up to par. Specific instances of this practice are described in a letter dated May 2, 2014 from Gregory P. Mount, the Partnership's former CFO/Compliance Offer, to the Texas States Securities Board:

> On January 25, 2013 (trade date) Mr. Garrison recorded a purchase of 7,000,000 units of Sutton Capital Trust I and 7,000,000 units of Sutton Capital Trust IV with a total cost basis of $6,720,000 for both securities. Mr. Garrison then marked these securities to par or $14,000,000 as of the trade date, January 25, 2013 which resulted in an immediate unrealized gain of $7,280,000. This calculates to a 108.33% gain on the day Mr. Garrison recorded these purchases. As of August 31, 2013 these two purchases still had not settled.

---

[3]     While LaPorte supports the relief requested herein and has agreed to the terms of the proposed settlement, the recitation of facts set forth herein and legal arguments made herein are the statements and arguments of the Trustee and LaPorte reserves all of its rights concerning such statements and arguments.

> Normally security transactions settle within two business days after the trade date.
>
> Mr. Garrison recorded a total of five other purchases in January, March, June and August of 2013 similar to the Sutton Capital Trust transactions that had not settled as of August 31, 2013. These unsettled purchases had a total cost basis of $17,141,375 as of August 31, 2013. Mr. Garrison marked these securities to par for a total market value of $32,900,000 which results in an unrealized gain in the Fund of $15,758,625. This calculates to a gain of 91.93% on these seven purchases. As of August 31, 2013 the Fund was overvalued by $15,758,625 as a result of Mr. Garrison's recording of these purchases. Mr. Garrison has been receiving management fees in 2013 based on these imaginary unrealized gains of $15,758,625.

Letter from Gregory P. Mount to Texas State Securities Board, dated May 2, 2014.

15.     As a result of Monroe Garrison's use of inflated valuations, the book and records of the Partnership incorrectly showed the Partnership's investments were realizing substantial returns, when there was no actual return occurring.

**B.  LaPorte Failed to Identify Fraud**

16.     LaPorte was retained by the Debtor to provide financial reporting and auditing services. LaPorte failed to report relevant facts in the various financial statements it prepared and failed to identify the Partnership's fraudulent practice of marking-up securities.

17.     Based on the flawed financial statements prepared by LaPorte, the Partnership and Monroe Garrison took millions of dollars in improper performance and management fees.

**C.  Investor Plaintiffs' Suit against LaPorte**

18.     On October 18, 2013, before the Partnership filed for bankruptcy, certain investors in the Investor Group commenced a law suit entitled *J. P. Bryan and Margaret Vonder Hoya v. Garrison Municipal Partners, LP, CMG Management, LP, General Partner, and Charles Monroe Garrison,* Case No. 2013-63132, in the District Court of Harris County, Texas, 164th Judicial District (the "Investor-Garrison Suit").  The plaintiffs in the Investor-Garrison

Suit allege that Monroe Garrison placed the investors in unsuitable and illiquid investments and charged excessive management and performance fees.

19.     On July 16, 2014, after the Debtor filed for bankruptcy, the Investor Plaintiffs commenced a lawsuit entitled *J.P. Bryan, Bryan Consolidated Business Interests, Ltd., JP and Mary Jon Bryan Foundation, Mary Jon Bryan, Margaret Vonder Hoya, HRB Global, Ltd., Margaret Vonder Hoya Trust, HRB Oil & Gas, Ltd, Michael J. Maples, Sr., Michael J. Maples, Jr., MJMJR, Ltd., Elizabeth Maples, The Maples Descendants Trust, Margaret Vonder Hoya Grandchildrens Trust, Nathan Bright Petty 2012 Trust, Margaret Louise Petty Morris 2012 Trust, Elizabeth Carrie Petty 2012 Trust, and Bradford Clay Vonder Hoya 2012 Trust And Margaret Louise Bright Petty Testamentary Trust v. Laporte, a Professional Accounting Corporation*, Case No. 2014-40948 in the District Court of Harris County, Texas, 164th Judicial District (the "Investor-LaPorte Suit").

20.     In the Investor-LaPorte Suit, the Investor Group's claims against LaPorte are based on LaPorte failing to identify Monroe Garrison's fraudulent mark-up scheme.  Investor-LaPorte Suit Complaint, ¶ 2 ("LaPorte never saw a valuation of the bonds and should have realized something was amiss because the "fair value" assessment and "par" were too close together - that alone should have sent LaPorte looking for more information.")

**D.  Trustee's Claims Against Garrison Parties and LaPorte**

21.     The Trustee and his Special Counsel investigated the affairs of the Debtor to determine the claims the Debtor's estate has against LaPorte.

22.     Special Counsel pursued the Debtor's estate's claims against LaPorte and participated in settlement negotiations resulting in the Settlement Agreement. The Trustee has

determined in the exercise of his sound judgment that entry into the Settlement Agreement is an

equitable result, reasonable, fair and in the best interest of creditors.

## SUMMARY OF THE SETTLEMENT

23.     The key terms of the Settlement are:[4]

a.     ***Consideration***. THREE MILLION TWO HUNDRED THIRTY THOUSAND
Dollars ($3,230,000.00) which has been paid by or on behalf of LaPorte to the
Investor Plaintiffs and the Trustee by wiring the funds into an account
pursuant to joint instructions provided by Investor Plaintiffs and the Trustee,
through their counsel ¶ 1.3(a).

b.     ***Investor Plaintiffs.***  J.P. Bryan, Bryan Consolidated Business Interests, Ltd.,
J.P. and Mary Jon Bryan Foundation, Mary Jon Bryan, Margaret Vonder
Hoya, HRB Global, Ltd., Margaret Fonder Hoya Trust, HRB Oil & Gas, Ltd.,
Michael J. Maples, Sr., Michael J. Maples, Jr., MJMJR, Ltd., Elizabeth
Maples, The Maples Descendants Trust, Margaret Vonder Hoya
Grandchildrens Trust, Nathan Bright Petty 2012 Trust, Margaret Louise Petty
Morris 2012 Trust, Elizabeth Carrie Petty 2012 Trust, Bradford Clay Vonder
Hoya 2012 Trust, and Margaret Louise Bright Petty Testamentary Trust,
including all their heirs, personal representatives, officers, directors,
stockholders, associates, staff, employees, agents, independent contractors,
successors, assigns, and their attorneys (Eric Lipper, Michael J. Durrschmidt,
Melissa N. Sternfels and the law firm of Hirsch & Westheimer, PC), ¶ 1.1(1).

c.     ***Trustee.***  Rodney D. Tow as the Chapter 7 Bankruptcy Trustee for Debtor
Garrison Municipal Partners, LP, including all his agents, associated
attorneys, former employees, stockholders, affiliated entities, heirs, personal
representatives, successors, assigns, and his attorneys (Timothy Micah Dortch,
R. Brent Cooper, Lauren Tow and the law firm of Cooper & Scully, PC)., ¶
1.1(2).

d.     ***Laporte***.   Defendant/Third-Party   Plaintiff   LaPorte,   A   Professional
Corporation, including all their officers, directors, employees, agents,
associated attorneys, former employees, stockholders, affiliated entities,
heirs, personal representatives, successors, assigns, Hidalgo Banfill Zlotnik
& Kermali PC ("Hidalgo"), including all their officers, directors, employees,
agents, associated attorneys, former employees, stockholders, affiliated
entities, heirs, personal representatives, successors, assigns, LaPorte and
Hidalgo's attorneys, (Gregg W. Weinberg, Mark B. Rabe, H. Ross Asher
and the law firm of Roberts Markel Weinberg Butler Hailey, PC) and their

---

[4]     This is a summary of the terms of the Settlement Agreement and reference should be made to the
Settlement Agreement for the full terms.

insurance carriers, CNA Global Specialty Lines and Philadelphia Indemnity Insurance Company. Release Agreement, ¶ 1.1(3).

e. ***All Claims Released.*** "All Claims" means all claims, demands and causes of action of any kind, recognized now or at any later time under any applicable law (including without limitation the law of Texas and the United States Bankruptcy Code), at common law, statutory or otherwise for all damages of any kind, recoverable now or at any later time under any applicable law (including without limitation the law of Texas and the United States Bankruptcy Code). "All Claims" includes without limitation all claims, demands and causes of action based on sole or concurrent negligence, gross negligence, accounting malpractice, professional negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, quantum meruit, violations of statutes or governmental regulations of any state, including Tex. Bus. & Comm. Code §17.41 *et seq* (the "DTPA"), malfeasance, nonfeasance, fraud, intentional torts, malicious conduct, false or misleading or deceptive or unconscionable conduct, Chapter 5 claims arising under the United State Bankruptcy Code, any other breach of legal duty, or any combination thereof. All Claims further includes all claims, demands, and causes of action for any and all damages, including without limitation all actual damages, all damages consisting of additional income taxes, disgorgement of fees, increases in management as well as performance fees, all consequential damages, all statutory damages, all punitive and exemplary damages, prejudgment and post-judgment interest, attorneys' fees and costs of court, all other damages or losses, or any combination thereof., ¶ 1.7 p.

24.    The Investor Plaintiffs and the Trustee will follow the procedure set forth in the Proposed Order to determine the allocation of the Compensation between the Investor Plaintiffs and the Trustee.

## BASIS FOR RELIEF

25.    Congress explicitly provided mechanisms in the Bankruptcy Code to encourage settlements. "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005). "Compromises are favored in bankruptcy" because they minimize litigation costs and further the parties' interest in expediting the administration of a

bankruptcy case. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 1993)).

26.     Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved. Bankruptcy Rule 9019(a) provides in relevant part that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." FED. R. BANKR. P. 9019(a). Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). Moreover, Bankruptcy Code section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.     Approval of a proposed settlement is left to the sound discretion of the reviewing court. *See, e.g., In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (noting that courts should exercise their discretion "in light of the general public policy favoring settlements"). The burden of establishing the fairness of a compromise rests on the proponent(s) of the compromise; however, a debtor is not required to present a full mini-trial or evidentiary hearing to adjudicate the issues being settled. Rather, when determining whether to approve a compromise, the court "is not to decide the numerous questions of law and fact raised" by the compromise, but is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006).

28.     A bankruptcy court should approve a settlement under Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy

estate. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well- informed decision, comparing the terms of the compromise with the likely rewards of litigation." *In re Cajun Elec.,* 119 F.3d at 356 (citations omitted); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferr, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980).   Moreover, a bankruptcy court need not be convinced that the proposed settlement is the best possible, but "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp*., 398 B.R. 816, 833 (Bankr. D. Del. 2008).

29.     The Fifth Circuit has directed that, in determining whether to approve a proposed settlement, a Bankruptcy Court must evaluate the following factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. *In re Age Ref. Inc.,* 801 F.3d 530, 540 (5th Cir. 2015); *In re Jackson Brewing Co.*, 624 F.2d at 602.

30.     Under the third, catch-all provision, the Fifth Circuit has specified two additional factors.  First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *In re Foster Mortg. Corp*., 68 F.3d at 917.  Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*. at 918 (internal citations omitted).

31.     The Trustee believes that the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer* and further defined by the Fifth Circuit Court of Appeals.

## ANALYSIS OF PROPOSED COMPROMISE

**A. The LaPorte Settlement Falls Within the Range of Reasonableness.**

32.     The Trustee has weighed the reasonableness factors for purposes of Bankruptcy Rule 9019 and submits that the LaPorte Settlement falls within the range of reasonableness for the reasons articulated above. The Settlement Agreement provides a fair procedure for the Trustee to recover its share of the Settlement Amount for the Debtor's estate with minimizing further expenses of litigation.

**B. The Probability of Success in the Litigation, with Due Consideration for the Uncertainty in Fact and Law.**

33.     The continued prosecution of the LaPorte Litigation does not guarantee a result superior to the result obtained under the LaPorte Settlement. The hurdles faced by the Trustee now illustrate the complexity of the disputed issues and the time and effort that would be necessary to fully litigate them.

34.     Given the defenses available to the LaPorte with respect to the Trustee's claims in the LaPorte Litigation and the inherent uncertainties of litigation, the Trustee cannot be certain of the results of any such litigation. These factors weigh in favor of entering into the LaPorte Settlement.  These facts also support the Trustee's position that the Settlement Amount falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness.

35.     The LaPorte Settlement is expected to result in a substantial cash influx into the Debtor's estate. This influx would substantially increase the cash available to the Trustee for

distribution to creditors in accordance with the waterfall provided for under Bankruptcy Code section 727.

**C. The Complexity and likely Duration of the Litigation and any Attendant Expense, Inconvenience and Delay.**

36.     The LaPorte Litigation involves complex legal issues relating to damages, causation and apportionment of liability among the parties.  The historical record relating to the LaPorte Litigation between the parties over their competing claims and the issues raised demonstrate that, if not settled, the continued litigation will be complex and protracted.

37.     The continued prosecution of the LaPorte Litigation to a judgment will take many years. Further assuming the Trustee prevails, the Trustee believes LaPorte will exhaust any appeals, in which case the Trustee would incur significant litigation expenses for years to come. If litigated, the Trustee likely will not know the outcome of the LaPorte Litigation for several years.

38.     Second, the attendant costs of the LaPorte Litigation will be significant, notwithstanding that the Trustee's Special Counsel is on a contingency fee arrangement and has agreed to advance the out-of-pocket expenses of the litigation. The Trustee would need to retain experts and create a damage model that prevails over the experts the LaPorte Entities would likely retain and the Investor Plaintiffs would likely retain. Even though Special Counsel has agreed to bear the costs of such experts during the litigation, such costs will be a deduction from the ultimate recovery by the Trustee.  The Trustee and his professionals believe that entry into the LaPorte Settlement at this time is in the best interest of the estate.

## <u>CONCLUSION</u>

39.     The Trustee submits that the proposed compromise under the LaPorte Settlement satisfies the requirements established under Bankruptcy Rule 9019, the Supreme Court in *TMT*

*Trailer* and applicable Fifth Circuit law. In light of these considerations, the Trustee believes that the proposed compromise falls well within the range of reasonableness, especially in light of the practical reality that "compromises are . . . often times desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d at 602 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The Trustee respectfully requests that the Bankruptcy Court grant the relief requested in his Motion and approve the proposed compromise set out in the LaPorte Settlement and the Proposed Order.

WHEREFORE, the Trustee respectfully request that the Bankruptcy Court enter an order in the form attached hereto (i) approving the Trustee's settlement with the Investor Plaintiffs and LaPorte set out in the Settlement Agreement and the Proposed Order, (ii) authorizing the Trustee and Laporte to execute and deliver the Mutual Release and any agreements reasonably necessary to close and implement the LaPorte Settlement, and (ii) granting such other and further relief to which the Trustee may be entitled.

DATED: April 4, 2017

Respectfully submitted,

DIAMOND MCCARTHY, LLP

*/s/ Charles M. Rubio*_____
Kyung S. Lee
State Bar No. 12128400
Charles M. Rubio
State Bar No. 24083768
Diamond McCarthy, LLP
909 Fannin Street, 15th Floor
Two Houston Center
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5195

GENERAL COUNSEL TO
RODNEY D. TOW, TRUSTEE

-and-

COOPER & SCULLY, P.C.
Lauren Tow
State Bar No. 24081179
Timothy Micah Dortch
State Bar No. 24044981
R. Brent Cooper
State Bar No. 04783250
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Facsimile:  (214) 712-9540

-and-

COOPER & SCULLY, P.C.
Christopher D. Lindstrom
State Bar No. 24032671
815 Walker, Suite 1040
Houston, Texas 77002
Telephone:  (713) 236-6800
Facsimile:  (713) 236-6880

SPECIAL COUNSEL TO
RODNEY D. TOW, TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 4, 2017, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; and (ii) within one business day transmitted to the parties listed on the attached Service List by the method indicated.


*/s/ Charles Rubio*_____
Charles Rubio

<u>Exhibit A</u>

Settlement Agreement

[Filed Under Seal]