IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| GARRISON MUNICIPAL PARTNERS, LP, | § § | Case No. 14-32867 |
| Debtor | § § | Chapter 7 |

### DON & KAY GREEN'S REPLY BRIEF REGARDING MANDATORY SUBORDINATION UNDER 11 U.S.C. § 510(b)

Claimants Don & Kay Green (the "Greens") file this Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) and would show the Court as follows:

#### INTRODUCTION

1.  In *SeaQuest*, the Fifth Circuit recognized that certain claims with a provenance in equity are not subject to mandatory subordination under Section 510(b)[1] because it is possible for an equity holder to convert its claim against the debtor to debt prior to the debtor's bankruptcy filing. Section 510(b) therefore must be interpreted in such a way as to exclude claims for redemption from its scope. Furthermore, unless form is to be elevated over substance, it must be interpreted in such a way as to exclude any claims that bear the same economic relationship to the debtor and its creditors as claims for redemption. In his response to the Greens' Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) (the "Greens'

---

[1] All "Section" references herein are to Title 11 of the United States Code unless otherwise specified.

Brief")(the "Trustee's Response"), the Trustee promotes an application of Section 510(b) and the case law thereunder that is overly broad because it fails to account for the correct application under the Fifth Circuit analysis. The interpretation of Section 510(b) proposed in the Greens' Brief correctly analyzes the Fifth Circuit case law: that claims are not subject to mandatory subordination when a former equity holder has relinquished its ability to participate in the risks and rewards of equity investment prior to the petition date and does not seek to recover losses that occurred during the period of ownership.

## ARGUMENT

2.	In order for a claim to be for "damages arising from the purchase or sale of a security of the debtor," there must be "some nexus or causal relationship between the claim and the sale." *SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest Diving, LP)*, 579 F.3d 411, 421 (5th Cir. 2009). In *SeaQuest*, the Fifth Circuit recognized that that nexus or causal relationship no longer exists when a former equity holder has converted its equity interest to debt pre-petition. *Id.* at 422-23. Although the Trustee emphatically asserts that the Greens did not convert their former equity interest to debt for purposes of Section 510(b), he does not offer any convincing reason why this is so or how one determines whether or not a former equity holder has effectively converted its equity interest to debt.

I.	<u>The Existence or Non-Existence of a Promissory Note Is Not</u>

**Determinative**

3.	At most, the Trustee argues that it is the existence or non-existence of a promissory note which determines whether or not a claimant has successfully converted its equity interest to debt. [Doc. No. 277, Trustee's Reply ¶ 38]. However, it is clear that the Fifth Circuit does not view this as a critical distinction because it cited *Burtch v. Gannon (In re Cybersight, LLC)*, 2004 U.S. Dist. LEXIS 24426, 2004 WL 2713098 (D. Del. Nov. 17, 2004) as authority for the position that claims for redemption are not subject to mandatory subordination. *SeaQuest*, 579 F.3d at 423. The claimant in *Cybersight* had no promissory note from the debtor. Instead, the claimant held a state court judgment for the debtor's breach of its promise in the LLC Agreement to purchase the claimant's membership interests in the debtor. The Fifth Circuit, quoting *Cybersight*, stated that the essential similarity between the claims involving promissory notes and the claim in *Cybersight* was that "the claimants, pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors." *SeaQuest*, 579 F.3d at 423. This essential similarity applies equally to the Greens' claim: on the date of the Debtor's bankruptcy filing, according to the express terms of the Limited Partnership Agreement of Garrison Municipal Partners (the "Partnership Agreement"), the Greens were no longer able to participate in the benefits and risks associated

with being equity holders of the Debtor. [Doc. No. 274-1, Partnership Agreement ¶ 5.5(k)].

4. The Fifth Circuit has stated that the interpretation of Section 510(b) should not be guided by the elevation of form over substance. *See Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 154 (5th Cir. 2015). Whether or not a debtor has issued a formal promissory note to a claimant to whom it owes a fixed amount, the economic nature of the claim is unchanged and the economic relationship of the claimant to the debtor, and by extension to the debtor's other creditors, is likewise unchanged. By looking to whether or not the claimant has relinquished its ability to participate in the benefits and risks of equity investment rather than merely to whether or not a promissory note exists, the Fifth Circuit bases its distinction between converted and non-converted claims on the actual economic relationship between the parties rather than on a mere formality.

II. **Neither *Tristar* Nor *Marine Holdings* Provide a Persuasive Basis to Distinguish the Greens' Claim from Other Redemption Claims**

5. Except for the promissory note distinction discussed above, the Trustee's only basis for distinguishing the Greens' claim from other redemption claims that are not subject to mandatory subordination are the cases of *Pensco Trust Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 782 F.3d 492 (9th Cir. 2015) in the Ninth Circuit and *Official Comm. of Unsecured Credi-*

*tors v. FLI Deep Marine, LLC (In re Deep Marine Holdings, Inc.)*, Adv. No. 10-03116, 2011 Bankr. LEXIS 579 (Bankr. S.D. Tex. Jan. 19, 2011) by Judge Isgur in this district. However, neither of these cases provide a persuasive basis to distinguish the Greens' claim from the redemption claims identified in *SeaQuest* as not subject to mandatory subordination under Section 510(b). *Tristar* is not persuasive because it expressly rejects the holdings and reasoning of the cases that the Fifth Circuit relied on in *SeaQuest* to demonstrate when an equity holder has effectively converted its equity interest to debt. *Marine Holdings* is not persuasive because the claimants never asserted that they had converted their equity interests to debt and, therefore, the court did not decide or even consider that issue.

  A. *Tristar*

  6. Although *Tristar* bears some factual similarity to the case at hand, it should not be regarded as persuasive authority in this circuit because it expressly rejects the holdings and reasoning that the Fifth Circuit followed in *SeaQuest*. *Tristar* involves facts very similar to *Cybersight*. In both cases, the debtors were required by their respective LLC or operating agreements to repurchase the claimants' equity interests, but failed to do so. The claimants in each case then obtained state court judgments for breach of contract prior to the debtors' bankruptcy filings. The claims that the claimants asserted in the respective bankruptcy cases were based on those state court judgments. However, whereas the Ninth Circuit

held that such claims were subject to mandatory subordination under Section 510(b), the court in *Cybersight* held that such claims were for redemption and not subject to mandatory subordination. The Ninth Circuit rejected the holding and reasoning of *Cybersight*, as well as that of *MarketXT* and *Mobile Tool*, all of which are cases the Fifth Circuit cited favorably in support of its observation that an equity holder can convert its equity interest to debt pre-petition. *Tristar*, 782 F.3d at 496-97. Because *Tristar* expressly rejects the reasoning followed by the Fifth Circuit in *SeaQuest*, that case should not be regarded as persuasive in this circuit.

### B.     *Marine Holdings*

7.     The memorandum opinion in *Marine Holdings* is a case decided by a bankruptcy judge in this same district. However, the decision is not binding on the Court. "It is unambiguous that one district judge is not bound by the decisions of the other district judges of the district court…. Accordingly, two district judges from the same district court could reach opposite conclusions on the same difficult question of law." *Villarreal v. Showalter (In re Villarreal)*, 413 B.R. 633, 641 (Bankr. S.D. Tex. 2009). *Also, In re Romano*, 350 B.R. 276, 281 (Bankr. E.D. La. 2005). Therefore, even if the facts of *Marine Holdings* were the same as the facts of this case for all practical purposes, the decision would not be binding on this Court. *Villarreal*, 413 B.R. at 641. However, the facts of *Marine Holdings* are not the same as the facts of this case for all practical purposes. In addition, the court

did not consider in that case the issue raised by the Greens in this case. Specifically, the court did not consider whether the claimants had converted their equity interests to debt prior to the petition date. Therefore, *Marine Holdings* should not be considered persuasive on the issue of whether or not the Greens converted their equity interest to debt prior to the petition date by withdrawing their partnership interest.

8. In *Marine Holdings*, the court stated that the only issue it had to address was "whether § 510(b) includes claims that arise during the course of a claimant's ownership of a security or, instead, whether § 510(b) only encompasses claims for damages incurred through the actual purchase or sale of a security." *Marine Holdings*, 2011 Bankr. LEXIS 579 at *14. The court was called upon to consider only this issue because the claimants argued only that their claims were not subject to mandatory subordination because they involved post-issuance conduct rather than conduct involving the actual purchase or sale of their securities. *Id.* at *7-8. The claimants further argued that the core of their claims was not their appraisal rights for fair market value as a result of the merger, but the breaches of fiduciary duty, unjust enrichment, and related claims based on the debtor's conduct that occurred in the years before the merger. *Id.* at *7.

9. Considering that the claimants characterized their claims primarily as claims to recover losses to the value of their equity interests prior to the confiscation of their stock, the holding of *Marine Holdings* is consistent with the Greens' interpretation of Section 510(b) as set forth in the Greens' Brief. The Greens' fundamental argument is that an investor seeks to recover a portion of its equity investment within the meaning of the Fifth Circuit in *SeaQuest* (and therefore falls within the broad scope of Section 510(b)) when the investor asserts a claim to recover the losses that occurred to his investment during the time that he held the investment. The *Marine Holdings* claims for breach of fiduciary duty and other illegal conduct prior to the merger would have sought retroactively to recoup to the claimants the loss in the value of their equity interests prior to the confiscation of their stock, even though the claimants were entitled to share in the potential rewards of equity investment throughout that same period. Although some of the *Marine Holdings* claims, such as the claim for appraisal rights, may be analogous to the Greens' claim, the claimants did not seek to distinguish these claims from those seeking to recover their pre-merger losses. Given the claimants' characterization of their claims as primarily claims for damages based on the debtor's post-issuance illegal conduct that improperly reduced the value of the claimants' equity interests prior to confiscation, the court's decision addressed different factors that

were not present in the Green's case and should not affect the position of the Greens in the case at bar.

10.  In contrast to the claimants in *Marine Holdings*, the Greens do not seek to recover any loss in the value of their equity investment that occurred as a result of the Debtor's post-issuance conduct while they held their investment. Like a claim for redemption, the Greens' claim seeks only the value of their equity interest at the time they relinquished their ability to participate in the risks and rewards of equity investment, subject to all losses already incurred. In this regard, the Greens' claim is factually distinct from the *Marine Holdings* claims and should not be treated in the same way.

11.  Furthermore, unlike the *Marine Holdings* claimants, the Greens do not argue that post-issuance conduct can never form the basis of claim subject to mandatory subordination. Rather, they argue that at some point a former equity holder must be viewed as having converted its equity interest into debt, because the Fifth Circuit expressly recognized that possibility. The Greens reached that point when they irrevocably withdrew their partnership interest and relinquished their ability to participate in the risks and rewards of equity investment in the Debtor. They are not reaching back to recover losses to their investment that occurred prior to that point. The court in *Marine Holdings* did not address this argument and its holding

does not provide any basis to distinguish between those claims where the claimant has effectively converted its equity interest to debt prior to the petition date and those claims where the claimant has not. As stated by the court, the only issue considered and decided in that case was whether or not Section 510(b) includes claims that arise from post-issuance conduct. Therefore, *Marine Holdings* should not be considered persuasive on the issue of whether or not the Greens' withdrawal of their partnership interest effectively converted their equity interest to debt prior to the Debtor's bankruptcy filing for purposes of mandatory subordination under Section 510(b).

## Conclusion

12.     Throughout his brief, the Trustee assumes as fact that the Greens "are attempting to recoup their equity investments" and "seek to recover a portion of their equity investment," but he does not identify any specific fact that supports this assertion. [Doc. No. 277, Trustee's Response ¶¶ 27 and 43]. He identifies no specific fact concerning the Greens' claim that makes it different from the redemption claims—in particular the *Cybersight* claim, which involved no promissory note—that the Fifth Circuit identified as not subject to mandatory subordination under Section 510(b). Likewise, the Trustee asserts that "it is evident" that the Greens' claim arises from the purchase of their ownership interest and that their brief "makes clear" that the claim relates directly to their purchase of the owner-

ship interest; but, again, the Trustee identifies no specific fact about the Greens' claim that makes it different in this regard from the redemption claims discussed in *SeaQuest*. [Doc. No. 277, Trustee's Response ¶ 36].

13. The Trustee does not identify any such facts because they do not exist. The Greens' claim is not "cloaked" as a redemption claim; it *is* a redemption claim. The Greens' economic relationship to the Debtor and its other creditors on the petition date was the same in all material respects as the claimants' economic relationship to the respective debtors in *Montgomery Ward*, *Mobile Tool*, *MarketXT*, and *Cybersight*.[2] Specifically, on the petition date, the Greens had already relinquished all right to participate in the risks and rewards of equity ownership in the Debtor and they do not seek to recover losses of their equity investment that occurred prior to the date of their relinquishment. Because the Fifth Circuit chose to follow the holdings of *Montgomery Ward*, *Mobile Tool*, *MarketXT*, and *Cybersight*, finding that the claimants therein were true debt claimants on the petition date, not equity claimants masquerading as debt claimants, the Court should hold that the Greens too are true debt claimants and therefore that their claim is not subject to mandatory subordination.

---

[2] *Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836 (Bankr. D. Del. 2001); *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369 (Bankr. S.D.N.Y. 2007); *Cybersight*, 2004 U.S. Dist. LEXIS 24426, 2004 WL 2713098.

Dated: September 28, 2017

> Respectfully submitted,
>
> */s/ Reese Baker*
> Reese Baker
> TX Bar No. 01587700
> 950 Echo Lane, Ste. 200
> Houston, Texas 77024
> (713) 979-2279
> (713) 869-9100 Fax
> ATTORNEY FOR THE GREENS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) was filed electronically and served upon all parties receiving electronic notice from the Court's ECF notification system in the above-referenced bankruptcy case.

> */s/ Reese W. Baker*
> Reese W. Baker