UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Garrison Municipal Partners, LP<br><br>      Debtor. | Chapter 7<br><br>Case No. 14-32867 (EVR) |

**TRUSTEE'S APPLICATION TO (I) EMPLOY PARKINS LEE & RUBIO LLP AS HIS GENERAL COUNSEL NUNC PRO TUNC TO AUGUST 1, 2020 AND (II) TERMINATE EMPLOYMENT OF DIAMOND MCCARTHY LLP**

      THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.

      REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE EDUARDO V. RODRIGUEZ,
UNITED STATES BANKRUPTCY JUDGE:

      Rodney D. Tow, chapter 7 trustee (the "Trustee") for the estate of the above-captioned debtor (the "Debtor"), files this application (the "Application") to (i) employ Parkins Lee & Rubio LLP (the "PLR") as his general counsel, *nunc pro tunc* to August 1, 2020, pursuant to the terms of the engagement letter attached hereto as Exhibit A (the "Engagement Letter") and (ii) terminate the retention of Diamond McCarthy LLP, as his general counsel for Debtor's chapter 7 estate.  In

support of the Application, the Trustee submits the declaration Charles M. Rubio attached hereto as Exhibit B (the "Rubio Declaration") and respectfully states the following:

**SUMMARY OF PROPOSED EMPLOYMENT APPLICATION**

| Name of Trustee | Rodney D. Tow |
|---|---|
| Name of Professional to be Employed | Parkins Lee & Rubio LLP |
| Reason Employment is Needed | Trustee seeks representation by a bankruptcy attorney to represent him as chapter 7 trustee |
| Compensation Agreement | See Exhibit A |
| Trustee's Reasons for Selection: | Mr. Rubio at PLR has represented the Trustee in this case at his prior law firm Diamond McCarthy LLP and has extensive knowledge about Garrison's chapter 7 case. |

**JURISDICTION**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of the Debtor's chapter 7 case (the "Chapter 7 Case") and this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief sought are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and rule 2014-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**BACKGROUND**

4. On May 22, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

2

**A.     The Debtor**

5.     The Debtor is a limited partnership organized in February 2008 under the laws of the State of Texas. The primary objective of the Debtor was to invest in the municipal bond market.

6.     CMG Management, LP ("CMG Management") is the general partner of the Debtor. Garrison Capital Management, LLC ("Garrison Capital Management") is the general partner of CMG Management. Garrison Capital Management is a manager-managed company.

7.     Prior to the Petition Date, Charles Monroe Garrison ("Monroe Garrison") was the sole manager of Garrison Capital Management. Monroe Garrison owned 95.5% of Garrison Capital Management. In that capacity, Mr. Garrison controlled the general partner of the Debtor. The general partner of the Debtor in turn controlled the operations and investment strategies of the Debtor.

**B.     Events Leading to Bankruptcy**

8.     When the Partnership commenced on or about February 2008, the Partnership raised an amount in excess of $23 million from investors (the "Investors"). The Partnership conducted most of its investment trading activities with two prime brokers, Deutsche Bank Alex. Brown ("Deutsche Bank") and Merrill Lynch (and also at Morgan Stanley Smith Barney LLC ("Morgan Stanley")), pursuant to agreements with these two brokers. Through the use of margin accounts, the Partnership borrowed approximately $27,000,000.00 in 2008, such that at the end of 2008, the Partnership invested approximately $50,000,000.00 in bonds.

9.     Between February 2008 and the Petition Date, Monroe Garrison managed the funds of the Partnership. Investors became limited partners by investing in the Partnership through

various subscription agreements.  Certain Investors made redemption calls and withdrew from the Partnership between February 2008 and the Petition Date.

10. A series of events unfolded starting in 2012 and through 2013 that affected the Partnership.  First, Gregory Mount, the Chief Financial Officer of the Debtor, resigned at the end of 2012.  Second, Mr. Mount reported certain irregularities in the way Monroe Garrison conducted the business of the Debtor to the Texas Securities Board in 2013.  Third, the Debtor's auditors LaPorte CPAs and Business Advisors withdrew certain of their audited financial statements for the Partnership.  Fourth, certain limited partners/investors commenced a lawsuit entitled *J. P. Bryan and Margaret Vonder Hoya v. Garrison Municipal Partners, LP, CMG Management, LP, General Partner, and Charles Monroe Garrison*, Case No. 2013-63132, in the District Court of Harris County, Texas, 164th Judicial District (the "Garrison Suit").  The Garrison Suit alleges that Monroe Garrison placed the Plaintiffs in unsuitable and illiquid investments and charged excessive management and performance fees.  Fifth, disputes arose over efforts by Investors to redeem their interests.

11. The Partnership retained financial advisors, a new accounting firm, and a law firm to defend the Partnership, CMG Management, Garrison Capital Management and Monroe Garrison in the Garrison Suit.  The costs of all these efforts were mounting and were funded from the remaining assets in the Partnership.

C. **Bankruptcy and Appointment of Trustee**

12. On the Petition Date, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.

13. After the Petition Date, the United States Trustee appointed Rodney D. Tow to serve as the duly qualified and acting Chapter 7 trustee of the Debtor's estate.

14. Since his appointment, the Trustee has liquidated the Debtor's assets in accordance with the duties set out in section 704(a)(1) of the Bankruptcy Code.

### D. Uncovering Garrison's Fraudulent Mark-Up Practice

15. During the bankruptcy case, the Trustee determined that Monroe Garrison caused the Partnership to "value" non-marketable securities in its books in amounts that far exceeded the amount paid for such investments. Specifically, Monroe Garrison would cause the Partnership to purchase certain bonds at below par and then would immediately mark them up to par.

16. As a result of Monroe Garrison's use of inflated valuations, the book and records of the Partnership incorrectly showed the Partnership's investments were realizing substantial returns, when there was no actual return occurring.

17. LaPorte was retained by the Debtor to provide financial reporting and auditing services. LaPorte failed to report relevant facts in the various financial statements it prepared and failed to identify the Partnership's fraudulent practice of marking-up securities.

18. The Trustee determined that based on the flawed financial statements prepared by LaPorte, the Partnership and Monroe Garrison took millions of dollars in improper performance and management fees.

### E. Settlement with LaPorte and the Investor Plaintiffs

19. On July 16, 2014, after the Debtor filed for bankruptcy, certain investors (the "Investor Plaintiffs") commenced a lawsuit entitled *J.P. Bryan, Bryan Consolidated Business Interests, Ltd., JP and Mary Jon Bryan Foundation, Mary Jon Bryan, Margaret Vonder Hoya, HRB Global, Ltd., Margaret Vonder Hoya Trust, HRB Oil & Gas, Ltd, Michael J. Maples, Sr., Michael J. Maples, Jr., MJMJR, Ltd., Elizabeth Maples, The Maples Descendants Trust, Margaret Vonder Hoya Grandchildrens Trust, Nathan Bright Petty 2012 Trust, Margaret Louise Petty Morris 2012 Trust, Elizabeth Carrie Petty 2012 Trust, and Bradford Clay Vonder Hoya 2012 Trust*

*And Margaret Louise Bright Petty Testamentary Trust v. Laporte, a Professional Accounting Corporation*, Case No. 2014-40948 in the District Court of Harris County, Texas, 164th Judicial District (the "LaPorte Suit").

20. In the LaPorte Suit, the Investor Plaintiffs' claims against LaPorte are based on LaPorte failing to identify Monroe Garrison's fraudulent mark-up scheme.

21. The Trustee investigated the affairs of the Debtor to determine the claims the Debtor's estate has against LaPorte. The Trustee entered into a settlement agreement with LaPorte and the Investor Plaintiffs (the "Investor Plaintiff-LaPorte Settlement") whereby LaPorte paid a total amount of $3,230,000 which was allocated between the Debtor's estate and the Investor Plaintiffs. Pursuant to the Investor Plaintiff-Laporte Settlement, the Investor Plaintiffs waived all their remaining claims against the Debtor's estate.

22. The Investor Plaintiffs do not include all the Investors. Specifically, the Investor Plaintiffs do not include Donald J. Green, Donna Reeder, Marathon Financial Insurance Company, Jay Steven Adelson, Robert Kevin Rose and Patricia Thomas IRA.

F. **Interim Distribution to Remaining "Trade" Creditors**

23. As a result of the Investor Plaintiff-Laporte Settlement, the Trustee held funds in the amount of $1,431,975.33.

24. The Trustee filed a motion seeking to use $533,063.33 of the funds available in the estate to pay all the Debtor's "trade" creditors in full [ECF 268] (the "Interim Distribution Motion").

25. On November 16, 2017, the Bankruptcy Court entered an order approving the Interim Distribution Motion [ECF 295]. The Trustee has since made the distributions authorized in the Interim Distribution Motion.

6

26. As a result of these distributions, the only remaining claim holders/equity holders in the case are the remaining Investors who are not parties to the Investor Plaintiff-La Porte settlement (the "Non-Settling Investors"): Donald J. Green, Donna Reeder, Marathon Financial Insurance Company, Jay Steven Adelson, Robert Kevin Rose and Patricia Thomas IRA.

### G. Omnibus Claim Objection

27. In order to provide an equitable distribution to the Non-Settling Investors, the Trustee filed an omnibus claim objection [ECF 252] (the "Omnibus Claim Objection") to subordinate all of the Non-Settling Investor claims to the level of equity and allow them pursuant to the net amount each Non-Settling Investor invested into the Debtor.

28. One of the Non-Settling Investors, Donald J. Green, objected to the Omnibus Claim Objection on the grounds that he submitted a redemption request to the Debtor and he argued that as a result of this redemption request he should be considered a creditor and not an equity holder.

29. The Bankruptcy Court overruled the objection and granted the Omnibus Claim Objection in a Memorandum Opinion and Order [ECF 285] (the "Memorandum Opinion").

### H. Green Appeals to the District Court

30. The Greens appealed the Memorandum Opinion to the District Court. The District Court has not yet ruled on the appeal. The Trustee awaits a resolution of the appeal so he can continue the administration of the case and close the case.

### RELIEF REQUESTED

31. The Trustee requests that the Court enter an order substantially in the form of the proposed order (the "Proposed Order") attached hereto authorizing the Trustee to (i) retain PLR as his new general counsel pursuant to the terms of the Engagement Letter, *nunc pro tunc* to August 1, 2020, and (ii) terminate Diamond McCarthy LLP as his general counsel.

**BASIS FOR RELIEF**

32. Section 327 of the Bankruptcy Code provides that, subject to court approval, a trustee "may employee one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent the trustee or assist the trustee in carrying out the trustee's duties under this title."

33. Bankruptcy Rule 2014(a) requires that an application to employ a professional include the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the united states trustee. Fed. R. Bankr. P. 2014. The connections must be described in a verified statement. *Id*.

34. The Trustee continues to need representation in this case. Mr. Rubio was the principal attorney at Diamond McCarthy LLP representing the Trustee in the case. Effective August 1, 2020, Mr. Rubio became a partner of PLR. The Trustee seeks to retain PLR to replace Diamond McCarthy.

35. The Trustee seeks to retain PLR pursuant to the terms of the Engagement Letter which provides for a compensation arrangement on an hourly basis. PLR is not requesting any retainer from the Trustee. PLR must seek compensation of its fees and reimbursement of out-of-pocket expenses in accordance with sections 330 and 331 of the Bankruptcy Code. PLR understands that it bears responsibility for ensuring that its employment applications are properly filed with the Bankruptcy Court.

36. As indicated in the Rubio Declaration, PLR is a "disinterested person" within the meaning of section 327(a) of the Bankruptcy Code.

37. As reflected in the Engagement Letter, PLR agreed to serve as the Trustee's general bankruptcy counsel in this case commencing on August 1, 2020. Pursuant to Bankruptcy Local Rule 2014-1(a), "[i]f an application for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous." The Trustee contends that *nunc pro tunc* relief is appropriate and should be granted.

## NO PRIOR REQUEST

38. No prior motion or application for the relief requested herein has been made to this Court or any other court.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order, approving the Trustee's retention of PLR and granting such other and further relief as the Court may deem just and proper.

Dated: August 31, 2020

RODNEY D. TOW, CHAPTER 7 TRUSTEE FOR
GARRISON MUNICIPAL PARTNERS, LP

*/s/ Rodney D. Tow*
Rodney D. Tow
1122 Highborne Cay Court
Texas City, TX 77590-1403
281-429-8300


PARKINS LEE & RUBIO LLP

*/s/ Charles M. Rubio*
Charles M. Rubio P.C.
Pennzoil Place
700 Milam, Suite 1300
Houston, Texas 77002
Phone: 212-763-3331
Email: crubio@parkinslee.com

CERTIFICATE OF SERVICE

    I certify that on August 31, 2020 I caused a true and correct copy of the foregoing Application to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service.

                              */s/ Charles M. Rubio*